# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| RICHARD TESORIERO, on behalf of himself and all others similarly situated,<br><br>                              Plaintiff,<br><br>          v.<br><br>CERTAINTEED CORPORATION,<br><br>                              Defendant. | Civil Action 5:11-CV-109<br>          (TJM/ATB)<br>**Class Action Complaint**<br><br>Jury Trial Demanded |

Plaintiff Richard Tesoriero, individually and on behalf of himself and all others similarly situated, by his undersigned attorneys, alleges upon personal knowledge as to himself, and upon information and belief (based upon investigation of counsel) as to all other matters, as to which allegations Plaintiff believes substantial evidentiary support will exist after a reasonable opportunity for further investigation and discovery, as follows:

## NATURE OF ACTION

1.     This is a class action against CertainTeed Corporation ("CertainTeed" or "Defendant") on behalf of all persons and entities who owned, own, or acquired homes, residences, buildings or other structures physically located in the United States, on which CertainTeed WeatherBoards FiberCement exterior siding ("Siding") products containing fly ash are or have been installed since 2002 to the present.

2.     In stark contrast to CertainTeed's glowing representations and warranties concerning their Siding, the product is severely defective and problematic. CertainTeed

WeatherBoard FiberCement is not impervious to moisture invasion and degradation. It cracks warps, rots, buckles, discolors, delaminates, deteriorates and otherwise does not perform as expressly warranted and represented. Yet CertainTeed continues to sell it to the public and continues to make their false representations and warranties, despite the fact that the product that will eventually cause consumers massive property damage and substantial removal and replacement costs.

3.      This class action seeks damages, punitive damages, injunctive relief, costs, attorneys' fees, and other relief as a result of CertainTeed's willful, wanton, reckless, and/or grossly negligent conduct in causing consumers' homes and structures to be in a dangerous, defective, unsafe, and unfit condition for habitation.

## PARTIES

4.      Plaintiff and class representative Dr. Richard Tesoriero is a resident and citizen of Hannibal, New York.

5.       Defendant CertainTeed Corporation is a corporation with its principal place of business located at 750 E. Swedesford Road, Valley Forge, Pennsylvania 19482. CertainTeed is a leading North American manufacturer of building materials including roofing, siding, insulation, windows and patio doors, fence, decking, railing, foundations, and pipe. The company has approximately 7,000 employees and more than 40 manufacturing facilities throughout the United States.

6.      CertainTeed sells Siding throughout the United States.

7.      Upon information and belief, customer complaints and warranty claims made concerning CertainTeed Siding are processed in Pennsylvania.

2

8.     Upon information and belief, all marketing of CertainTeed Siding in the United States, including distribution of advertising as well as marketing and promotional materials, has been managed by offices in Pennsylvania.

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the Plaintiff and Defendant are of diverse citizenship and the matter in controversy exceeds seventy-five thousand dollars ($75,000.00) exclusive of interest and costs, and pursuant to 28 U.S.C. § 1332(d) (2), because the Plaintiff and Defendant are of diverse citizenship and the aggregate amount in controversy exceeds five million dollars ($5,000,000.00) exclusive of interest and costs.

10.     Venue is proper in this Court pursuant to 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred, a substantial part of the property that is the subject of this action is situated, and Defendant is subject to personal jurisdiction, in this District.

11.     As a result of Defendant's manufacturing, marketing, distributing, promoting and/or selling, either directly or indirectly through third parties or related entities, of their Siding to purchasers throughout New York, the Defendant obtained the benefits of the laws of New York and profited from New York commerce.

12.     Defendant conducted systematic and continuous business activities in and throughout the State of New York and otherwise intentionally availed themselves of the markets of the State of New York through the promotion and marketing of their business.

## FACTUAL ALLEGATIONS

### Background

13.     CertainTeed sold or distributed Siding throughout the United States for installation on homes, commercial buildings, and other structures.  The Siding is or was installed on Plaintiff's home and other structures, and is or was installed on the homes and structures of the Class.

14.     Prior to 2002, CertainTeed designed, manufactured, and distributed the Siding using grain and silica sand as core materials.  Upon information and belief, CertainTeed changed its design and/or formula in or around 2002 and began to use fly ash instead of grain and silica in its Siding.  Fly ash is an industrial by-product of coal burning power plants and costs less than cement, so its use by CertainTeed lowered the cost of concrete utilized in the manufacture of the Siding.  However, the defective change in design and/or formulation resulted in water absorption, porosity problems, and other uniform defects alleged herein.

15.     CertainTeed markets and warrants its Siding as durable, and as offering long-lasting protection for a specified life of 50 years.  The industry and consumers appropriately rely on the warranty and marketing nomenclature to mean a product with a 50-year warranty is expected to have a usable lifetime of 50 years.

16.     CertainTeed's marketing materials, which are widely distributed to building professionals and generally available to Plaintiff and the Class at the time of sale, state, among other things, "Each and every sheet and board is engineered for decades of superior protection, wear and durability and is backed with a century-long tradition of excellence and customer satisfaction," and "When we say CertainTeed, we mean quality made certain, satisfaction guaranteed." CertainTeed further represents that its Siding "LASTS LONGER,"

4

"OUTPERFORMS THE OTHERS" and that "It's built to take on the elements and then some."

17.     Specifically, CertainTeed claims that its Siding has superior freeze/thaw protection, protects against damaging moisture, and resists everyday bumps and harmful impacts. CertainTeed's Siding has not lived up to CertainTeed's representations and, given the early and severe deterioration that requires unexpected maintenance and premature repair and replacement, has not proven to be of value when compared to other siding products.

18.     CertainTeed represented to Plaintiff and the Class, in documents generally available to the public, that its Siding would last for 50 years without problems, or the company would remedy the situation. CertainTeed made this representation before purchase and at the time of purchase via sales brochures and marketing materials (including but not limited to store displays, sales seminars, and training materials).

19.     Upon information and belief, CertainTeed learned that the addition of fly ash into its Siding caused water absorption and porosity problems. As the Siding goes through repeated freeze-thaw cycles, it experiences increased expansion and contraction as a result of excess moisture in the product. Excessive expansion and contraction of Siding leads to the uniform defects alleged herein.

20.     The Siding manufactured and sold by CertainTeed is defectively designed and manufactured such that it prematurely fails, causing damage to the underlying structures and other property of Plaintiff and members of the Class and lowers the value of the property. The Siding is non-conforming.

21.     The defects present in CertainTeed Siding are so severe that Plaintiff and members of the Class must repair or replace their siding sooner than reasonably expected by

ordinary consumers who purchase siding generally and by consumers who purchased CertainTeed's siding product specifically.

22.     All of CertainTeed's Siding is uniformly defective such that Plaintiff's and Class members' Siding is failing before the time periods advertised, marketed, and guaranteed by CertainTeed or otherwise expected by ordinary consumers purchasing siding.

23.     CertainTeed knew or reasonably should have known the Siding is defective as designed and manufactured such that the product fails prematurely due to moisture invasion or other defects.  The outward manifestation of the Siding deterioration and deformation is cracking, rotting, warping, peeling, discoloration, and product shrinkage.  At the extreme, the Siding breaks and falls off the structure.  In short, the Siding does not perform in accordance with the reasonable expectations of consumers that such products be durable and suitable for use as building products.

### Representative Plaintiff Richard Tesoriero

24.     In 2004, Dr. Tesoriero's builder installed 575 pieces of CertainTeed, Duck Back Mahogany colored, Siding on his New York home.

25.     The primary reason Dr. Tesoriero purchased CertainTeed Siding, as opposed to another type of siding product, is because the Siding came with a purported 50-year warranty.

26.     In 2004, Dr. Tesoriero informed CertainTeed that his Siding was discoloring (leaching and chalking white residue).  Responding to Dr. Tesoriero's letter, CertainTeed denied liability for the discoloration of the boards yet provided twelve gallons of cleaning solution to remove efflorescence (crusty, white salt deposits, leached from the FiberBoard as

6

water passes through it) and labor to apply the solution. The cleaning solution was only a
temporary fix for the mineral deposits. Dr. Tesoriero has had to reapply solution yearly.

27.    In 2008, Dr. Tesoriero began to notice more discoloration, shrinkage, peeling,
warping, and chipping with his Siding. Dr. Tesoriero did not know that his Siding was
"defective" at this time.

28.    In May, 2008, Dr. Tesoriero reasonably submitted a warranty claim to
CertainTeed informing them that a problem was taking place with his Siding.

29.    In July, 2008, CertainTeed sent Dr. Tesoriero a letter denying his claim.

30.    Plaintiff did not discover that his Siding suffers from a defect until shortly
before filing this Complaint.

### CertainTeed's On-going Refusal to Notify Customers That Defects and Failures are Associated With Its Siding

31.    Upon information and belief, CertainTeed has received thousands of warranty
claims alleging a manufacturing or design defect in the Siding. Upon information and belief,
some of these warranty claims have been improperly rejected and other of the warranty claims
have been settled in a manner not strictly consistent with the warranty terms.

32.    Despite receiving complaints from consumers, such as Plaintiff and other
members of the Class, CertainTeed has refused to convey effective notice to consumers
concerning the defects associated with the Siding, and refused to fully repair the damage
caused by the premature failure(s) of its product.

33.    The following represents a small sampling of Internet postings by CertainTeed
Siding purchasers and installers' general frustrations with the defective Siding:

> *    We noticed several small cracks in our siding (probably about
>      8), within about 20 months of our build. Unfortunately we did

7

not report them immediately and CertainTeed would only replace the boards. So we have the boards (enough to reside the whole section) but have to pay for the labor on our own...
http://ths.gardenweb.com/forums/load/build/msg062339122911 1.html

\* The product is shrinking at the seams over 1/2". I used the water diverters and they are now visible. The builder specs a pre-finished product therefore I am unable to caulk the seams. Also the nails were pulling thru the product. After close review we found the nailing to be per spec. (flush nailing) we are thinking the product was absorbing too much moisture and froze during the winter months, making the product weak. Since we have had these problems CertainTeed has re-formulated the product and added more flash to the panel.
http://www.contractortalk.com/f33/hanging-certainteed-cement-siding-31865/

\* Our company installed 25 sq. of CertainTeed Fiber Cement Siding on a house April of 2006 and 3 month later we had chalking and discoloration problems that had to be repaid at our expense. At that time a representative told us it was an excellent job of installing. 9 months later we more discoloration and shrinkage at end joints, bottom of boards cupping out, and boards cupping between studs 16"o.c. We contacted or supplier and ask to file a warranty claim they contacted CertainTeed and they sent a Rep. out to look at the siding. A few days later they responded with a letter and said it was basically an installation problem or a moister problem from a bad roof, or poor bath room or kitchen ventilation. We had installed Hardi Fiber Cement Siding on a house before this one and one house after this house with the same cutting and nailing system with no problems. You tell me if CertainTeed doesn't have a product problem. http://www.contractortalk.com/f33/hanging-certainteed-cement-siding-31865/

\* I am now having the same problem of cupping, shrinkage and pieces literally falling off. We had this problem two years ago on a section of a home and after much hassle from the reps we were given replacement product but had to pay for tear off and installation. Now two years later boards are loose, cupping, sagging and falling off of all the buildings in this condo project.

Can anyone give me come more insight or ammunition for dealing with this company and product again? The end guy gets

8

> screwed all the time. CertainTeed should stand behind all costs associated with their bad product, including the re-installation cost, and feel that the supplier should be on board to help as well.
>
> Again, any and all help and info would be great....the more we get together on this the further we can get collectively. http://www.contractortalk.com/f33/hanging-certainteed-cement-siding-31865/

34.     CertainTeed's response to customers' warranty submissions and other reasonable requests for assistance and compensation is woefully inadequate.

### CertainTeed's Acts and Omissions Have Damaged Plaintiff and the Class

35.     As a result of the defects and failures alleged herein, Plaintiff and the Class have suffered actual damages.  The Siding on their homes, buildings, and other structures have and will continue to fail prematurely compared to the time expected by ordinary consumers, the time marketed by CertainTeed, and the time warranted by CertainTeed, resulting in and requiring them to expend large sums of money to repair the damage associated with the incorporation of the Siding into their homes, buildings, and other structures, and to prevent such damage from continuing.

36.     Upon information and belief, CertainTeed has engaged in a uniform practice of denying warranty claims.  Specifically, CertainTeed's agents represent that the defects alleged herein constitute normal wear and tear or were installation-related problems.

37.     CertainTeed's uniform representations to Plaintiff and the Class that the Siding defects did not represent a design or manufacturing defect or that the problems were caused by improper installation constitute affirmative misrepresentations of material fact in light of the known defects inherent in the Siding purchased by Plaintiff and the Class. Such representations serve to conceal the true nature of CertainTeed's defective Siding.

38.     At all relevant times, CertainTeed had a duty to disclose to Plaintiff and the Class that is Siding was defective, prone to foreseeable and uniform problems, such as the problems described herein, and otherwise was inherently flawed in its design such that the Siding was not suitable for use as an exterior building material.

39.     Because the defects in the Siding are latent and not detectable until manifestation, Plaintiff and the Class members were not reasonably able to discover their Siding was defective until after installation, despite the exercise of due diligence.  Indeed, at the time of first sale, building and construction professionals would not be able to detect the latent defect unless they subjected the Siding to their own testing, modeling, or analysis.

40.     The relatively small size of the typical individual Class member's claims, and because most homeowners and/or property owners have only modest resources, makes it unlikely that individual Class members could afford to seek a full and fair recovery against CertainTeed on their own.  This is especially true in light of the size and resources of CertainTeed and its parent corporation, Saint-Gobain.  A class action is, therefore, the only reasonable means by which Class members can obtain relief from this Defendant.

41.     The Siding manufactured and sold by CertainTeed is defectively designed and manufactured such that it fails prematurely, causing damage to the property of Plaintiff and members of the Class and forcing them to repair or replace their siding sooner than reasonably expected, than marketed, and than warranted.

42.     Plaintiff seeks to recover, for himself and the Class, the costs of repairing the damage to their property and replacing their Siding, and injunctive relief requiring CertainTeed to replace their defective Siding and modify their warranty claims process to uniformly provide relief in accordance with its obligations under the law.

## CLASS ACTION ALLEGATIONS

43.     This action is brought and may be maintained as a nationwide class action

pursuant to Federal Rule of Civil Procedure 23, and case law there under, on behalf of

Plaintiffs and all others similarly situated, with the Nationwide Class defined as follows:

> All individuals and entities that have owned, own, or acquired
> homes, residences, buildings, or other structures physically located
> in the United States, on which CertainTeed cement siding is or has
> been installed from January 1, 2002 to the present.  CertainTeed
> cement siding is defined as all siding manufactured or distributed
> by Defendant that contains fly ash.  Excluded from the Class is the
> Defendant, any entity in which Defendant has a controlling interest
> or which has a controlling interest of Defendant, and Defendant's
> legal representatives, assigns and successors.  Also excluded are
> the judge to whom this case is assigned and any member of the
> judge's immediate family.

44.     Alternatively or in addition to the Nationwide Class claims, Plaintiff brings, as

applicable to each of the various states where the laws are similar to each of the states in

which a named Plaintiff resides, all causes of action under Federal Rule of Civil Procedure 23

on behalf of themselves and State Sub-Classes defined as:

> All individuals and entities that have owned, own, or acquired
> homes, residences, buildings, or other structures physically located
> in the applicable State, on which CertainTeed cement siding are or
> have been installed since 2002. CertainTeed cement siding is
> defined as all siding manufactured or distributed by Defendant that
> contains fly ash.  Excluded from the Class are Defendant, any
> entity in which Defendant has a controlling interest or which has a
> controlling interest of Defendant, and Defendant's legal
> representatives, assigns and successors.  Also excluded are the
> judge to whom this case is assigned and any member of the judge's
> immediate family.

45.     Plaintiff reserves the right to re-define the Class(es) prior to class certification.

11

46.     Because the proposed Class likely includes many thousands, joinder is impracticable. The true number of Class members is likely known by Defendant. Disposition of the Plaintiff's and Classes' claims in single class action will provide substantial benefits to all parties and the Court.

47.     The claims of the Plaintiff are typical of the claims of the Class in that the Plaintiff, and all Class members, own homes, residences, or other structures on which defective Siding manufactured by CertainTeed has been installed. The Defendant's Siding has failed, and will continue to fail, prematurely. The Plaintiff, like all Class members, has been damaged by CertainTeed's conduct in that he has incurred or will incur the costs of repairing or replacing her siding and repairing the additional property damaged by the Siding's premature failure. Furthermore, the factual bases of CertainTeed's conduct is common to all Class members and represents a common thread of deliberate, fraudulent, and negligent misconduct resulting in injury to all members of the Class.

48.     There are numerous questions of law and fact common to Plaintiff and the Class. Those questions predominate over any questions that may affect individual Class members, and include the following:

a.      Whether CertainTeed Siding is defective in that it fails prematurely and is not suitable for use as an exterior building product for the length of time advertised, marketed, and warranted;

b.      Whether the Siding is defectively designed or manufactured;

c.      Whether CertainTeed knew or should have known of the defective nature of the Siding;

d.   Whether the Siding failed to perform in accordance with the reasonable expectations of ordinary consumers;

e.   Whether CertainTeed properly instructed consumers about the likelihood of premature failure;

f.   Whether the Siding fails to perform as advertised and warranted or expected by an ordinary consumer;

g.   Whether CertainTeed's conduct in marketing and selling its Siding involved misrepresentations, intentional omissions, or was otherwise unfair and deceptive.

h.   Whether Plaintiff and the Class are entitled to compensatory, exemplary, and statutory damages, and the amount of such damages;

i.   Whether CertainTeed should be declared financially responsible for notifying all Class members about their defective Siding and for all damages associated with the incorporation of such Siding into Class members' homes, residences, buildings, and other structures; and

j.   Whether CertainTeed has changed or altered is warranty program without notice the Plaintiff and the Class.

49.   Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained counsel with substantial experience in prosecuting statewide, multistate and national consumer class actions, actions involving defective products, and specifically, actions involving defective construction materials. Plaintiff and his counsel are committed to prosecuting this action vigorously on behalf of the Class they represent, and have the financial

resources to do so.  Neither Plaintiff nor her counsel has any interest adverse to those of the Class.

50.     Plaintiff and the members of the Class have suffered and will continue to suffer harm and damages as a result of CertainTeed's conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Absent a class action, the vast majority of the Class members likely would find the cost of litigating their claims to be prohibitive and would have no effective remedy at law.  Because of the relatively small size of the individual Class members' claims, it is likely that only a few Class members could afford to seek legal redress for CertainTeed's conduct.  Further, the cost of litigation could well equal or exceed any recovery.  Absent a class action, Class members will continue to incur damages without remedy.  Class treatment of common questions of law and fact would also be superior to multiple individual actions or piecemeal litigation, in that class treatment would conserve the resources of the courts and the litigants, and will promote consistency and efficiency of adjudication.

## ESTOPPEL FROM PLEADING THE STATUTE OF LIMITATIONS

51.     CertainTeed knew or reasonably should have known the Siding was defective prior to the time of sale, and intentionally concealed that material information and the truth concerning their product from Plaintiff and the general public, while continually marketing the Siding as dependable products.  Defendant's acts of fraudulent concealment include failing to disclose that its Siding was defectively manufactured and would deteriorate in less than its expected lifetime, leading to damage to the very structures they were purchased to protect.

14

52.     Because the defects in the Siding are latent and not detectable until manifestation, Plaintiff and the Class members were not reasonably able to discover their Siding was defective and unreliable until after installation, despite their exercise of due diligence.

53.     Plaintiff had no reasonable way to discover this defect until shortly before Plaintiff filed this complaint.

54.     Defendant had a duty to disclose that its Siding was defective, unreliable, and inherently flawed in its design and/or manufacture.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

#### (Breach of Express Warranty)

55.     Plaintiff incorporates by reference each of the allegations contained in the preceding paragraphs of this Complaint.

56.     Defendant marketed and sold its Siding into the stream of commerce with the intent that the Siding would be purchased by Plaintiff and members of the Class.

57.     Defendant expressly warranted that its Siding is well-suited as an outdoor siding material for a period of at least 50 years.  Defendant's representatives through its written warranties regarding the durability and quality of the Siding created express warranties which became part of the basis of the bargain Plaintiff and members of the Class entered into when they purchased the Siding.

58.     Express warranties created by CertainTeed go beyond the limited warranties CertainTeed relies upon.  CertainTeed also creates express warranties by the Siding's brochures and marketing materials.

15

59.     Defendant expressly warranted that the structural integrity of the Siding purchased by Plaintiff and Class members would last at least 50 years.

60.     Defendant breached its express warranties to Plaintiff and the Class in that Defendant's Siding did not, and does not, maintain its structural integrity and perform as promised. Defendant's Siding cracks, splits, warps, discolors, shrinks, falls off the structure, deteriorates prematurely, and otherwise does not perform as warranted by Defendant.

61.     Defendant's warranties fail their essential purpose because they purport to warrant that the Siding will be free from structural breakdown for at least 50 years when, in fact, Defendant's Siding falls far short of the applicable warranty period.

62.     Moreover, because the warranties limit Plaintiff's and Class members' recovery to replacement of the Siding piece by piece, with replacement labor not included, Defendant's warranties are woefully inadequate to repair and replace failed siding, let alone any damage suffered to the underlying structure due to the inadequate protection provided by the product. The remedies available in Defendant's warranties are limited to such an extent that they do not provide a minimum adequate remedy.

63.     The limitations on remedies and the exclusions in Defendant's warranties are unconscionable and unenforceable.

64.     Defendant has denied or failed to pay in full the warranty claims or has not responded to warranty claims.

65.     As a result of Defendant's breach of its express warranties, Plaintiff and the Class have suffered actual damages in that they purchased and installed on their homes and other structures an exterior siding product that is defective and that has failed or is failing prematurely due to moisture penetration and porosity problems. This failure has required or is

requiring Plaintiff and the Class to incur significant expense in repairing or replacing their siding. Replacement is required to prevent on-going and future damage to the underlying structures or interiors of Plaintiff's and Class members' homes and structures.

66.     Plaintiff on behalf of himself and all others similarly situated, demand judgment against Defendant for compensatory damages for themselves and each member of the Class, for the establishment of the common fund, plus attorney's fees, interest and costs.

## SECOND CAUSE OF ACTION

### (Breach of Implied Warranties of Merchantability and Fitness for a Particular Purpose)

67.     Plaintiff incorporates by reference each of the allegations contained in all of the preceding paragraphs of this Complaint.

68.     At all times mentioned herein, Defendant manufactured or supplied CertainTeed Siding, and prior to the time said Siding was purchased by Plaintiff, Defendant impliedly warranted to Plaintiff, and to Plaintiff's agents, that the product was of merchantable quality and fit for the use for which it was intended.

69.     Plaintiff and Plaintiff's agents relied on the skill and judgment of the Defendant in using the Siding.

70.     The product was unfit for its intended use and it was not of merchantable quality, as warranted by Defendant, in that it had propensities to break down and fail to perform and protect when put to its normal and intended use – as recommended by the Defendant. The Siding caused Plaintiff to sustain damages as herein alleged.

71.     The product was similarly unfit for its particular purpose. CertainTeed manufactured its Siding in a cold weather climate, and distributed, marketed, and sold the

17

Siding in cold weather climates. CertainTeed knew, or should have known, that its Siding would be subjected to sub-zero temperatures, snow, and sleet and that the Siding would be subjected to freeze-thaw cycles for a substantial period of each year.

72.     After Plaintiff was made aware of Plaintiff's damages as a result of the aforesaid product, notice was duly given to Defendant of the breach of said warranty.

73.     CertainTeed failed to provide adequate remedy and added additional terms to the warranties which independently cause the purported warranty to fail its essential purpose, thereby permitting remedy under implied warranties.

74.     As a direct and proximate result of the breach of said warranties, Plaintiff and the Class members suffered and will continue to suffer loss as alleged herein in an amount to be determined at trial.

75.     Plaintiff, on behalf of himself and all others similarly situated, demands judgment against Defendant for compensatory damages for themselves and each member of the Class, for the establishment of the common fund, plus attorneys' fees, interest, and costs.

### THIRD CAUSE OF ACTION

**(Violations of Sections 349-350 of New York's General Business Law:
Consumer Protection from Deceptive Acts and Practices Statute)**

76.     Plaintiff incorporates by reference each of the allegations contained in the preceding paragraphs of this Complaint.

77.     CertainTeed is a merchant with respect to its sale of Siding.

78.     CertainTeed knowingly committed unfair and deceptive trade practices by designing, manufacturing, promoting, selling and marketing its defective Siding to the consuming public.

79.     When CertainTeed was designing, marketing, manufacturing, testing and selling Siding, CertainTeed knew or reasonably should have known that the Siding was subject to failure when exposed to reasonably foreseeable conditions and under reasonably foreseeable uses, and therefore the Siding was unreasonably dangerous for consumers to use on structures.

80.     At no time did CertainTeed take the reasonable steps to remedy the defects in the Siding or try to ensure that the Siding was otherwise fit for its intended use on consumers' structures.

81.     CertainTeed also failed to give adequate warnings regarding the use and potential problems with its Siding.

82.     CertainTeed's actions complained of herein occurred and occur in the conduct of trade or commerce, and all of the conduct alleged herein occurs in the course of CertainTeed's business.

83.     Through their marketing, promoting and manufacturing of the Siding, CertainTeed intended to and did deceive consumers, by leading consumers in a material way by causing them to believe that the Siding was a merchantable, viable and warrantable CertainTeed product.

84.     By reason of the foregoing, CertainTeed's conduct represents unfair acts or practices that have the capacity to, has, and continues to deceive consumers.

85.     CertainTeed's conduct constitutes an unfair and deceptive trade practice under New York's general business law §349-350.

86.     As a direct and proximate result of these unfair and deceptive trade practices, Plaintiff and the members of the Class have been damaged as alleged herein, and are entitled

to recover actual and/or punitive damages to the extent permitted by law, including class
action rules, in an amount to be proven at trial.

## FOURTH CAUSE OF ACTION

### (Negligence)

87.     Plaintiff incorporates by reference each of the allegations contained in the
preceding paragraphs of this Complaint.

88.     Defendant had a duty to Plaintiff and the Class to exercise reasonable and
ordinary care in the formulation, testing, design, manufacture, and marketing of the Siding.

89.     Defendant breached its duty to Plaintiff and the Class by designing,
manufacturing, advertising and selling to Plaintiff and the Class a product that is defective and
will fail prematurely, and by failing to promptly remove the Siding from the marketplace or to
take other appropriate remedial action.

90.     Defendant knew or should have known that the Siding was defective, would
fail prematurely, was not suitable for use as an exterior siding product, and otherwise was not
as warranted and represented by Defendant.

91.     As a direct and proximate cause of Defendant's negligence, Plaintiff and the
Class have suffered actual damages in that they purchased and installed on their homes,
residences, buildings, and other structures an exterior siding product that is defective and that
fails prematurely due to water absorption, porosity problems, moisture penetration and other
inherent defects.  On information and belief, the defect causes damage to Class members'
existing homes, residences, buildings, and other structures, in addition to damage to the siding
itself, by allowing moisture to enter through the siding.  These failures have caused and will

20

continue to cause Plaintiff and the Class to incur expenses repairing or replacing their siding as well as the resultant progressive property damage.

92.     Plaintiff on behalf of himself and all others similarly situated, demands judgment against Defendant for compensatory damages for themselves and each member of the Class, for establishment of a common fund, plus attorney's fees, interest and costs.

## FIFTH CAUSE OF ACTION

### (Unjust Enrichment)

93.     Plaintiff incorporates by reference each of the allegations contained in the preceding paragraphs of this Complaint.

94.     Substantial benefits have been conferred on Defendant by Plaintiff and the Class by purchasing CertainTeed Siding, and Defendant has knowingly and willingly accepted and enjoyed these benefits.

95.     CertainTeed either knew or should have known that the payments rendered by Plaintiff and the Class were given and received with the expectation that the CertainTeed Siding would perform as represented and warranted.  For CertainTeed to retain the benefit of the payments under these circumstances is inequitable.

96.     Defendant's acceptance and retention of these benefits under the circumstances make it inequitable for Defendant to retain the benefit without payment of the value to the Plaintiff and the Class.

97.     Plaintiff and the Class are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant, plus interest thereon.

98.     As a direct and proximate result of CertainTeed's wrongful conduct and unjust enrichment, Plaintiff and the Class are entitled to an accounting, restitution from, and

institution of, a constructive trust disgorging all profits, benefits, and other compensation obtained by CertainTeed, plus attorneys' fees, costs, and interest thereon.

## SIXTH CAUSE OF ACTION

### (Strict Liability - Manufacturing Defect)

99.     Plaintiff incorporates by reference each of the allegations contained in the preceding paragraphs of this Complaint.

100.    At all times relevant to this Complaint, CertainTeed was engaged in the design, manufacture, and sale of Siding.

101.    The Siding was defectively manufactured and posed a substantial likelihood of harm at the time it was sold.

102.    When the Siding left CertainTeed's control, it reached consumers without substantial and/or significant changes in the condition as CertainTeed sold it.

103.    Because CertainTeed defectively manufactured the Siding and it was unreasonably dangerous to the Plaintiff's property and to the proposed Class members' properties at the time CertainTeed sold the Siding for its intended use on customer's structures.

104.    The defectively manufactured Siding causes, among other damages and expense, water damage, structural damage and repair and replacement costs.

105.    Because of CertainTeed's defective manufacture of the Siding, Plaintiff and the putative Class members have been, currently are and will be damaged in an amount to be determined at trial.

22

## SEVENTH CAUSE OF ACTION

### (Strict Liability and Negligence - Design Defect)

106.    Plaintiff incorporates by reference each of the allegations contained in the preceding paragraphs of this Complaint.

107.    At all times relevant to this Complaint, CertainTeed was engaged in the design, manufacture, and sale of Siding.

108.    The Siding was defectively designed and posed a substantial likelihood of harm at the time it was sold.

109.    Were the design defect known at the time of the manufacture, a reasonable person would conclude that the utility of the product did not outweigh the risk inherent in marketing a product designed in that manner.

110.    Because CertainTeed defectively designed the Siding, the Siding was unreasonably dangerous to the Plaintiff's property and to the proposed Class members' properties at the time CertainTeed  sold the Siding for its intended use on customers' structures.

111.    Feasible alternatives existed to make the Siding safer for its intended use at the time of its design.

112.    The defectively designed siding reached consumers without substantial and/or significant changes in the condition as CertainTeed sold it.  CertainTeed knew that the Siding would reach consumers without a substantial and/or significant change.

113.    The defective Siding causes, among other damages and expense, water damage, structural damage and repair and replacement costs.

23

114.     The injuries caused to Plaintiff and the putative Class as a result of the defective Siding could and should have been reasonably foreseen by CertainTeed.

115.     Because of CertainTeed's defective design of the Siding, Plaintiff and the putative Class members have been, currently are and will be damaged in an amount to be determined at trial.

## EIGHTH CAUSE OF ACTION

### (Strict Liability and Negligence - Failure to Warn)

116.     Plaintiff incorporates by reference each of the allegations contained in the preceding paragraphs of this Complaint.

117.     CertainTeed's Siding was defectively designed and is unreasonably dangerous when used on customers' structures.

118.     CertainTeed knew or had reason to know that the Siding was dangerous, or was likely to be dangerous, when used.  At the time CertainTeed was selling the Siding, CertainTeed was aware, or reasonably should have been aware, of the foreseeable risks associated with the use of its Siding.

119.     Consumers using the Siding were not aware of its dangerous nature.

120.     CertainTeed failed to exercise reasonable care and give adequate warnings or instructions to consumers about the reasonably foreseeable dangers that could result from using the Siding under reasonably foreseeable conditions.

121.     When the Plaintiff and the proposed Class members bought the Siding, they were not aware of the dangerous and destructive nature of the siding and CertainTeed knew or had reason to know that those consumers would not realize the dangerous condition of the Siding.

24

122.    Due to CertainTeed's failure to provide consumers with adequate warnings or instruction about the dangerous and destructive nature of the Siding, Plaintiff and the proposed Class members have been harmed.  Such harm would not have been suffered if CertainTeed provided adequate warnings or instructions.

123.    Plaintiff and the proposed Class members have suffered damages that were directly and proximately caused by the unreasonably dangerous and destructive Siding, and have suffered damages because of CertainTeed's failure to give adequate warnings or instructions regarding any reasonably foreseeable problems with the Siding that could arise under reasonable foreseeable conditions of use.

124.    Plaintiff and the proposed Class members are entitled to damages in an amount to be determined at trial.

## NINTH CAUSE OF ACTION

### (Declaratory and Injunctive Relief Brought by Plaintiff on Behalf of Himself and Others Similarly Situated)

125.    Plaintiff incorporates by reference each of the allegations contained in the preceding paragraphs of this Complaint.

126.    Plaintiff on behalf of himself and putative Class members, seeks a Court declaration of the following:

a.      All Defendant's Siding manufactured from 2002 until the present has defects which cause it to fail and leak, resulting in water damage to property and the necessity of the removal and replacement of the Siding;

25

b.      All Defendant's Siding manufactured from 2002 until the present has a

defect in workmanship and material that causes failures;

c.      Defendant knew of the defects in its Siding and that the limitations

contained in its purported limited warranties are unenforceable;

d.      Defendant shall re-audit and reassess all prior warranty claims on their

Siding, including claims previously denied in whole or in part, where

the denial was based on warranty or other grounds; and

e.      Defendant shall establish an inspection program and protocol to be

communicated to Class members, which will require CertainTeed to

inspect, upon request, a Class member's structure to determine whether

a Siding failure is manifest.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, requests the Court to enter judgment against CertainTeed, as follows:

a.      Enter an order certifying the proposed Class (and subclasses, if applicable) pursuant to Fed. R. Civ. P. 23(b)(2) and 23(b)(3), designating Plaintiff as the named Class Representative of the Class, and designating the undersigned as Class Counsel;

b.      Declare that CertainTeed is financially responsible for notifying all Class members of the problems with CertainTeed products;

c.      Enter an order enjoining CertainTeed from further deceptive advertising, marketing, distribution, and sales practices with respect to CertainTeed products, and requiring CertainTeed to remove and replace Plaintiff's and Class members' Siding with a suitable alternative siding of Plaintiff's and Class members' choosing;

26

d.     Enter an order that all Defendant's Siding manufactured from 2002 until the present has defects which cause it to fail and leak, resulting in water damage to property and the necessity of the removal and replacement of the Siding; all Defendant's Siding manufactured from 2002 until the present has a defect in workmanship and material that causes failures; that Defendant knew of the defects in its Siding and that the limitations contained in its purported limited warranties are unenforceable; Defendant shall re-audit and reassess all prior warranty claims on their Siding, including claims previously denied in whole or in part, where the denial was based on warranty or other grounds; and Defendant shall establish an inspection program and protocol to be communicated to Class members, which will require CertainTeed to inspect, upon request, a Class member's structure to determine whether a Siding failure is manifest.

e.     Enter an award to Plaintiff and the Class that includes compensatory, exemplary, or punitive damages as allowed by New York law or other law, and statutory damages, including interest thereon, in an amount to be proven at trial;

f.     Declare that CertainTeed must account and disgorge, for the benefit of the Class, all or part of the ill-gotten profits it received from the sale of CertainTeed materials, or order CertainTeed to make full restitution to Plaintiffs and the members of the Class;

g.     Enter an award of attorneys' fees and costs, as allowed by statute and law;

h.     Enter an award of pre-judgment and post-judgment interest, as provided by statute and law;

i.     Grant Plaintiff and the Class leave to amend the Complaint to conform to the evidence produced at trial; and

j.     Grant such other or further relief as may be appropriate under the

27

circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of himself and the members of the Class hereby demand a trial by jury of any and all issues in this action so triable.

Dated:  January 31, 2011

Charles J. LaDuca  (No. 511604)
Brendan S. Thompson
CUNEO GILBERT & LADUCA, LLP
507 C Street, NE
Washington, DC 20002
(202) 789-3960
(202) 789-1813 (fax)

Robert K. Shelquist
LOCKRIDGE GRINDAL NAUEN PLLP
Suite 2200
100 Washington Avenue South
Minneapolis, MN 55401
(612) 339-6900
(612) 339-0981 (fax)

Clayton D. Halunen
Shawn J. Wanta
HALUNEN & ASSOCIATES
1650 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
(612) 605-4098
(612) 605-4099 (fax)

Michael A. McShane
AUDET & PARTNERS, LLP
221 Main Street, Suite 1460
San Francisco, CA 94105
(415) 568-2555
(415) 576-1776 (fax)

Arnold Levin
Charles E. Schaffer
LEVIN FISHBEIN SEDRAN & BERMAN
Suite 500
510 Walnut Street
Philadelphia, PA 19106
(215) 592-1500
(215) 592-4663 (fax)

## ATTORNEYS FOR THE NAMED PLAINTIFF

28